# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | Case No. 1: 11-cv-1056-AWI-BAM |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT |
| v. | |
| BRAULIO GAMINO, *et. al.*, | |
| Defendants. | |

## **INTRODUCTION**

On February 7, 2012, J&J Sports Production, Inc. ("Plaintiff") filed the present motion for default judgment against Defendants Braulio Gamino and Maria Tomasa Soto, individually and d/b/a Los Metates a/k/a/ Los Metates Authentic Mexican Food ("Defendants"). (Doc. 16). The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for March 16, 2012. Having considered the moving papers, and the Court's file, the Court GRANTS Plaintiff's motion for default judgment IN PART and judgment will be entered in the amount of $2,200.00 against Defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, a distributor of sports and entertainment programming, alleges that it owns commercial distribution rights to broadcast the closed-circuit program *Latin Fury 15: Julio Cesar Chavez v. John Duddy Championship Fight Program* ("the Program"), telecast nationwide on June 26, 2010. *See* Compl. ¶ 3. Plaintiff alleges that the Program was unlawfully intercepted and exhibited by Defendants at their commercial establishment, Los Metates Authentic Mexican Food Restaurant, located in Turlock, California. *Id.* ¶ 4. Plaintiff alleges that the interception and exhibition of the Program was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain. *Id.* ¶ 15.

On June 24, 2011, Plaintiff filed this action alleging violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, as well as of violations of California law against conversion and California Business and Professions Code §17200.

The summons and complaint were served upon Defendant Maria Soto by personal service on August 8, 2011 (Doc. 6) and on Defendants Braulio Gamino and Maria Soto, individually and doing business as Los Metates aka Los Metates Authentic Mexican Food, by substitute service on August 12, 2011. (Docs. 6&7). True and correct copies of the Proof of Service were filed with this Court on August 18 and August 27, 2011, respectively. On October 3, 2011, after Defendants failed to file an answer, Plaintiff requested an entry of default against Defendants, which was entered by the clerk on that same day. (Docs. 12 &13). On February 7, 2012, Plaintiff filed the instant motion for default judgment. Plaintiff's motion requests that the Court enter default judgment against Defendants for damages in the amount of $111,200.00. Defendants have not appeared or otherwise defended this action, including the motion for entry of default judgment.

**Legal Standard**

Where a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. *See Panning v. Lavine*, 572 F.2d 1386 (9th Cir.

1978). While factual allegations concerning liability are deemed admitted upon a defendant's default, the court does not presume that any factual allegations relating to the amount of damages suffered are true. *See Geddes*, 559 F.2d at 560; *TeleVideo Sys., Inc.,* 826 F.2d at 917-18. The Court must ensure that the amount of damages awarded is reasonable and demonstrated by the evidence. FED. R. CIV. P. 55(b)(2)(C)*; Geddes*, 559 F.2d at 560*; TeleVideo Sys., Inc.,* 826 F.2d at 917-18.

With the entry of default in the case at hand, this Court may accept the factual allegations of Plaintiff's complaint as true to assess liability. The complaint alleges that Defendants, with knowledge that the boxing program was not to be intercepted, unlawfully exhibited the fight at their establishment. The complaint is sufficiently plead, indicating the substantive merit of Plaintiff's claim, *i.e.*, unauthorized exhibition of the boxing program. Defendants' failure to contest this action demonstrates absence of a dispute as to material facts. There is no evidence the default resulted from excusable neglect since the service of the complaint is in order. Accordingly, the only issue remaining is an award of damages, attorneys fees, and costs.

## DISCUSSION

Plaintiff requests damages in the amount of $110,000.00 for alleged violations of 47 U.S.C. sections 605(e)(3)(C)(i)(II)(statutory damages) and (C)(ii)(enhanced statutory damages) and $1,200.00 for tortious conversion, for a total of $111,200.00 in damages.

The Federal Communications Act of 1934, 47 U.S.C. § 605 *et seq*. prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license. It provides a private right of action in federal court. Plaintiffs may request that courts award actual or statutory damages between $1,000 and $10,000 for each violation of section 605. 47 U.S.C. § 605(e)(3)(C)(i). Damages of up to $100,000 may be awarded for willful violations. 47 U.S.C. § 605(e)(3)(C)(ii).

**A.     Statutory Damages pursuant to 47 U.S.C. 605(e)(3)(i)(II)**

Under 47 U.S.C. § 605(e)(3), the Court may award statutory damages between $1,000 and $10,000 for a violation of the Act. Plaintiff contends that the maximum award against Defendant is necessary to deter future violations. (Doc. 16-5 at ¶ 13).

Plaintiff presents the following evidence in support of its request for damages. Defendants'

3

1  establishment is a medium-sized, family restaurant with a small bar, table seating, and a maximum
2  capacity of approximately seventy-five patrons. On June 26, 2010, the day of the Program, Gary
3  Gravelyn, an investigator from Gravelyn & Associates observed the Program airing at Defendants'
4  commercial establishment. (Doc. 16); *See* Decl. of Affiant Gary Gravelyn. Mr. Gravelyn reported
5  that he entered Los Metates at approximately 8:05 p.m. on June 26, 2010 without paying a cover
6  charge and observed two televisions each showing the Program. *Id.* Mr. Gravelyn states that the
7  maximum occupancy capacity of Los Metates is approximately 75 people, and he counted ten people
8  in the restaurant at the time of the Program. Mr. Gravelyn noted that Los Metataes is "in fair
9  condition" and is located in Turlock. The restaurant's dining area contains two approximately fifty-
10 inch projection style television sets, located "around the perimeter of [the] wall." *Id.* at 2. Between
11 8:05 p.m. and 8:10 p.m. on Saturday evening, June 26, 2012, Gravelyn conducted two head counts.
12 Each of the two counts revealed that 10 persons were present. *Id.* When Mr. Gravelyn exited the
13 establishment at 8:10 p.m., 12 persons were present.  Photographs of the establishment depict a
14 older, poorly maintained building in Turlock. (Doc. 16-3, exhibits).
15       Although Los Metataes can seat approximately 75 people, the largest number present while
16 the program was displayed is 12.  Nothing in the record suggests that Defendants experienced any
17 significant "commercial advantage or private financial gain" as a result of its airing the program.
18 The highest head count of the evening at 12 persons, indicates minimal, if any, financial gain to
19 Defendants as a result of the Program.
20       Absent evidence of commercial advantage or financial gain, district courts have awarded the
21 statutory minimum where the defendants were first-time offenders in establishments of similar size.
22 *See Joe Hand Promotions, Inc. v. Williams*, 2011 U.S. Dist. LEXIS 138247 (E.D. Cal. Nov. 30,
23 2011)(providing an expansive review of California statutory and enhanced statutory damage awards);
24 *See also, e.g., J & J Sports Productions, Inc. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, 2010 WL
25 2757106 (N.D. Cal. July 9, 2010) (No. C 09-05683 WHA) (setting statutory damages of $1000 and
26 enhanced damages of $250 in bar and grill with capacity of 150 people, and seven television sets
27 where 37 to 45 people were present while bout was broadcast); *J & J Sports Productions, Inc. v.
28 Rodriguez*, 2010 U.S. Dist. LEXIS 20288, 2010 WL 796942 (E.D. Cal. March 5, 2010) (No. CIV

S-08-1140 JAM DAD) (setting statutory damages of $1000 and enhancements of $4000 for taqueria with seating capacity of 30 and 16 to 20 patrons during showing of bout); *J&J Sports Productions v. Miranda*, 2009 U.S. Dist. LEXIS 112415, at *3-4 (N.D. Cal. Nov. 16, 2009) (awarding $1,000 in statutory damages for where the court found "no evidence that the violation occurred multiple times, that the establishment intended to directly profit from the violation, or that it actually profited from the violation"); *J & J Sports Productions v. Hernandezsilva*, 2010 U.S. Dist. LEXIS 96891 (S.D. Cal. Sept. 15, 2010) (awarding $1,000 because "Plaintiff does not alleged repeated violations, does not claim that Defendants advertised the event, and offers only conclusory statements in support of its contentions that Defendants realized financial gain from showing the program"); *Garden City Boxing Club, Inc. v. Nguyen*, 2005 U.S. Dist. LEXIS 29886, at *12 (E.D. Cal. Nov. 28, 2005) (awarding the statutory minimum and finding "no evidence of significant commercial advantage or private financial gain" where the defendant did not advertise or charge admission, and ten customers were present).

Here, the evidence shows that the Program was displayed on two televisions sets for no more than 12 people. There is no evidence that these Defendants are repeat offenders or that Defendants profited from the Program. Consequently, granting Plaintiff's request for the statutory maximum is inappropriate due to "the absence of unusual or particularly egregious circumstances under which [the] defendant broadcast the fight." *Don King Productions/Kingvision v. Maldonado*, 1998 U.S. Dist. LEXIS 20165, 1998 WL 879683 (N.D. Cal. December 11, 1998)(No. C-97-3530 WHO MED), *citing Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42, 44 (E.D. Pa. 1997). In light of the size of both the establishment, the audience that viewed the program, and the lack of evidence of financial gain, this Court recommends that statutory damages be set at $1,000.00.

**B.     Enhanced Damages pursuant to 47 U.S.C. 605(e)(3)(C)(ii)**

Plaintiff seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), which provides for an enhanced damage award of up to $100,000 when "a violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." 47 U.S.C. 605(e)(3)(C)(ii). Plaintiff alleges that Defendants' interception of the program was willful and for purposes of commercial advantage or private gain. Compl. ¶ 14.

Courts that have awarded enhanced damage awards due to willful violations of the Communications Act have cited such factors as the repeated violation of the Act, the intent to profit from the violations and actual profit derived from the violation. *Kingvision Pay-Per-View Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1197 (N.D. Cal. 2000).

While Plaintiff contends that Defendants' violation of §605(a) was willful and for commercial or financial gain, the documentary evidence provided by the Plaintiff fails to support that conclusion. The affidavit of Plaintiff's investigator notes that at most 12 patrons were present in the Defendants' establishment on the evening in question, while the capacity of the premises was seventy-five. (Doc. 16-3 at 2). The investigator noted that there was no cover charge to enter the premises in order to watch the sports broadcast. There is no evidence that the Defendants advertised the showing of this sporting event, or increased the price of food or drink on the night in question. Plaintiff has not argued that Defendants are repeat offenders or that the establishment was in very good condition or well maintained.

The Court finds no evidence to support a conclusion that the violation was both willful and for financial gain or commercial advantage. *See National Satellite Sports, Inc. v. Carrabia, et al.*, 2003 U.S. Dist. LEXIS 27198, 2003 WL 24843407 at *4 (*citing Kingvision Pay-Per-View, Ltd. v. Arias*, 2000 U.S. Dist. LEXIS 162, 2000 WL 20973 (N.D. Cal. Jan 7, 2000); *Don King Productions/Kingvision v. Carrera*, 1997 U.S. Dist. LEXIS 9137, 1997 WL 362115 at *2 (N.D. Cal. June 24, 1997) (evidence of willful exhibition for financial gain insufficient when there was no showing that a cover was charged, that the program was advertised or that food or drink prices were increased, and that the establishments were not filled to capacity.)). The Court declines to exercise its discretion to enhance the Plaintiff's award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). *Miranda*, 2009 U.S. Dist. LEXIS 112415 at 4.

**C.   Damages for Conversion**

Plaintiff also seeks $1,200.00 in conversion damages, the value of the property at the time of the conversion. (Doc. 16-5 at 9). Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's

6

conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, the evidence supports the request for conversion damages. Plaintiff was granted the exclusive commercial licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion. (Doc. 16-5, Ex. 1). Defendants did not license the programming from Plaintiff, yet exhibited the fight in Los Metates on June 26, 2010. The exhibition of the Program constituted Defendants' conversion by a wrongful act or disposition of property rights. (Doc. 16-5, ¶¶ 6-7.) Finally, the evidence submitted by Plaintiff shows the amount Plaintiff would charge for a sub-license fee for the Program. For an establishment with minimum seating for 0-100 people, similar in size to Defendants' establishment, the license fee would have been $1,200.00. (Doc. 16-5, Ex. 2). Thus, Plaintiff lost the license fee of $1,200.00. Accordingly, Plaintiff is entitled to damages for conversion in the amount of $1,200.00.

**D.      Attorney's Fees and Costs**

Costs and reasonable attorney's fees are recoverable under 47 U.S.C. § 605(e)(3)(B)(iii). In Plaintiff's prayer for relief in the complaint, Plaintiff seeks an award of costs and attorneys fees pursuant to 47 U.S.C. § 605. Compl. ¶ 18. However, the motion for default judgement and the supporting documents do not contain any argument or documentation in support of such a request. Accordingly, because the record provides no basis for determining a reasonable award, the Court recommends that Plaintiff's prayer for attorneys' fees and costs be denied without prejudice to

renewal accompanied by appropriate documentation to support the request for reasonable attorneys' fees and costs.

## RECOMMENDATIONS

Based on consideration of the declarations, pleadings and exhibits to the present application, the Court RECOMMENDS as follows:

1. Plaintiff's application for default judgment be GRANTED in part;
2. Judgment be entered in this action against Defendant Braulio Gamino and Defendant Maria Tomasa Soto; and
3. Damages in the amount of $2,200.00 be awarded as follows:
    a. For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $1,000.00;
    b. For the conversion of Plaintiff's property, the sum of $1,200.00.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 16, 2012**             /s/ **Barbara A. McAuliffe**
                                     UNITED STATES MAGISTRATE JUDGE